IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS

**FILED**
May 28, 2021
SX-2015-CV-00585
TAMARA CHARLES
CLERK OF THE COURT

**CLERK OF THE COURT**

# IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
## District of St. Croix

| | |
|---|---|
| **CLARK HUNT,** | Case Number: SX-2015-CV-00585 |
| **Plaintiff** | Action: **Breach of Contract** |
| **v.** | |
| **BRADLEY DOWNS et al,** | |
| **Defendant.** | |

## NOTICE of ENTRY
### of
## <u>Memorandum Opinion and Order</u>

**To:** Charles E. Lockwood, Esq.

Gregg R. Kronenberger, Esq.

Christopher A. Kroblin, Esq..

Marjorie Whalen. Esq.
Judges of the Superior Court
IT/law library/Law Clerks/Bluebook

**Please take notice that on June 01, 2021**
a(n) **Memorandum Opinion and Order**
dated **May 28, 2021** was/were entered
by the Clerk in the above-titled matter.

**Dated:** June 01, 2021

**Tamara Charles**
**Clerk of the Court**

By:

*Janeen Maranda*

**Janeen Maranda**
**Court Clerk II**

## SUPERIOR COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

CLARK HUNT,

PLAINTIFF,

v.

BRADLEY DOWNS, THERESA DOWNS, AND COLDWELL BANKER ST. CROIX REALTY,

DEFENDANTS.

BRADLEY DOWNS AND THERESA DOWNS,

COUNTER-CLAIMANTS,

v.

CLARK HUNT,

COUNTER-DEFENDANT.

Civil No. SX-15-CV-585

ACTION FOR SPECIFIC PERFORMANCE, BREACH OF CONTRACT, INTERPLEADER, AND BREACH OF GOOD FAITH AND FAIR DEALING

JURY TRIAL DEMANDED

CITE AS: 2021 VI SUPER 57U

Appearances:
Charles E. Lockwood, Esq.
Gregg R. Kronenberger, Esq.
Dudley Newman Feuerzeig, L.L.P.
St. Croix, U.S. Virgin Islands
*For Plaintiff/ Counter-Defendant Clark Hunt*

Christopher Allen Kroblin, Esq.
Marjorie Whalen, Esq.
Kellerhals Ferguson Kroblin, PLLC
St. Thomas, U.S. Virgin Islands
*For Defendants/ Counter-Claimants*
*Bradley Downs and Theresa Downs*

## MEMORANDUM OPINION AND ORDER

**WILLOCKS, Presiding Judge**

¶ 1    **THIS MATTER** is before the Court *sua sponte*.

## BACKGROUND

¶ 2    On December 2, 2015, Plaintiff Clark Hunt (hereinafter "Hunt") filed a verified complaint (Docket Entry No. 1)[1] against Defendant Bradley Downs and Defendant Theresa Downs (hereinafter collectively, "Downs"), and Defendant Coldwell Banker St. Croix Realty (hereinafter "Coldwell Banker") in connection with the sale of Hunt's residence at #13 Estate Prosperity, St. Croix, U.S. Virgin Islands (hereinafter "Property"). In the verified complaint, Hunt alleged that (i) on September 18, 2015, Downs, as buyers, and Hunt, as seller, entered into a purchase agreement for the sale and purchase of the Property (Compl. ¶ 4), (ii) Coldwell Banker was the real estate agent representing Downs (Compl. ¶ 5), (iii) according to the purchase agreement, Coldwell Banker was also the Escrow Agent holding an earnest money deposit in the total amount of Fifty Thousand Dollars ($50,000.00) (hereinafter "Earnest Money Deposit") pending Downs' compliance with the terms of the purchase agreement (Compl. ¶ 6), (iv) according to the purchase agreement, Downs was supposed to deposit an additional One Hundred Thousand Dollars ($100,000.00) (hereinafter "Additional Earnest Money Deposit") on or before September 15, 2015 or the receipt of a loan agreement (Id.), (v) according to the purchase agreement, Hunt is entitled to the Earnest Money Deposit and pursue an action for specific performance in the event Downs failed to comply with the terms of the purchase agreement (Compl. ¶ 7), (vi) Downs breached the terms of the purchase agreement and refused to complete the purchase of the Property (Compl. ¶ 8), and (vii) Coldwell Banker has not released the Earnest Money Deposit to Hunt despite Hunt's demand (Compl. ¶¶ 11-12). Hunt sought, inter alia, for specific performance for the purchase of

---

[1] "Docket Entry No." refers to the docket entry number in this matter for the Court's electronic filing system.

the Property and an award of the Earnest Money Deposit. Although Hunt's verified complaint stated that the purchase agreement was attached as Exhibit 1, no such exhibit was attached.

¶ 3     On February 8, 2016, Downs filed an answer and counterclaim against Hunt (Docket Entry No. 16). In the counterclaim, Downs alleged that (i) Downs, as buyers, and Hunt, as seller, entered into a purchase agreement, with an effective date of July 27, 2015, for the sale and purchase of the Property (Counterclaim ¶ 1), (ii) Downs paid the Earnest Money Deposit in accordance with the purchase agreement (Counterclaim ¶ 2), (iii) the purchase agreement contained a Third Party Financing Rider, which allowed Downs to terminate the purchase agreement if third party financing was not approved (Counterclaim ¶¶ 3-4), (iv) Downs applied for third party financing on July 28, 2015 and was subsequently denied (Counterclaim ¶¶ 5-6), (v) Downs notified Hunt through his agent by providing written notice of the denial of third party financing (Counterclaim ¶¶ 7-8), (vi) thereafter, the parties attempted to reach an agreement as to the reduction of the purchase price such that third party financing would be approved, but no agreement was ever reached (Counterclaim ¶ 9), (vii) Downs complied with the Third Party Financing Rider and properly terminated the purchase agreement (Counterclaim ¶ 11), (viii) according to the purchase agreement, Downs are entitled to the refund of the Earnest Money Deposit and Hunt is in breach by refusing to agree to the release of the Earnest Money Deposit (Counterclaim ¶ 13). Downs sought for "all contractual, consequential, and other damages permitted by law including interest and their awardable costs and attorneys' fees." (Docket Entry No. 16, p. 3.) Downs attached a copy of the purchase agreement referenced in the counterclaim as Exhibit A[2] and a copy of the Third Party Financing Rider as Exhibit B.

---

[2] The title of the purchase agreement attached as Exhibit A is "RESIDENTIAL PURCHASE AND SALE CONTRACT."

¶ 4     On March 9, 2016, Downs filed a motion for entry of default and motion to deem

counterclaim admitted (Docket Entry No. 18). Thereafter, due to some filing mishaps, there were

some minor procedural confusions, and this matter was closed but subsequently re-opened.[3] On

August 4, 2017, Hunt filed a motion to dismiss counterclaim (Docket Entry No. 45) and an

opposition to Downs' motion for entry of default and motion to deem counterclaim admitted, or

in the alternative, motion to set aside entry of default (Docket Entry No. 46).

---

[3] On March 9, 2016, Hunt filed a motion to dismiss without prejudice. On March 14, 2016, the Court entered an order whereby the Court dismissed the matter without prejudice. However, at the time the Court entered the March 14, 2016 order, the Court was unaware that Downs had already filed responsive pleadings and substantive motions in the Division of St. Thomas and St. John. Thus, Downs filed a notice of appeal to the Virgin Islands Supreme Court. Thereafter, the Court entered a notice of request for remand on August 31, 2016, which was subsequently granted.

In its August 31, 2016 notice of request for remand, the Court explained:

> Appellee Clark Hunt (hereinafter, "Hunt") filed a Verified Complaint on December 2, 2015. The case was assigned to the Honorable Judge Douglas A. Brady (hereinafter, "Hon. Judge Brady") on December 3, 2015. The Hon. Judge Brady recused from the matter on December 8, 2015. On February 8, 2016, the Downs filed their Answer and Counterclaim together with a Notice of Filing in Other Division (hereinafter, "Notice") in the Division of St. Thomas and St. John. Inadvertently, the pleadings were submitted to the Hon. Judge Brady's chambers.[2] As a result, this Court was not aware that the Downs had filed any responsive pleadings.
>
> On March 9, 2016, the Downs filed a Motion for Entry of Default and Motion to Deem Counterclaim Admitted and a Notice in the Division of St. Thomas and St. John. On the same day, Hunt filed a Motion to Dismiss Without Prejudice in the Division of St. Croix.
>
> Rather than file the Notice in the St. Croix Division, or forward a courtesy copy letting the undersigned know that they filed their substantive motions in another division, the Notice was filed together with the responsive pleading and the motions in the St. Thomas Division. As a result, this Court was not aware that the Downs had filed their substantive motions and responses.
>
> When ruling on Hunt's Motion to Dismiss, the only documents in the file at that time were Hunt's Verified Complaint and Hunt's Motion to Dismiss Without Prejudice. Because this Court was unaware that the Downs had filed responsive pleadings and substantive motions, Hunt's Motion to Dismiss Without Prejudice was granted and the case was closed. On March 29, 2016, the Downs filed a Motion for Reconsideration and/or Motion for Relief from Judgment. The Court did not rule on the Motion for Reconsideration and/or Motion for Relief from Judgment because of inadvertence and clerical error. The Notice of Appeal was received on August 23, 2016. Upon review of the record, this Court intends to rule on the Downs' Motion for Reconsideration and/ or Motion for Relief from Judgment and/or schedule a hearing on the matter. In light of the foregoing, the Court requests that in the interest of judicial efficiency, this matter be remanded to the Superior Court for further action as permitted by Supreme Court Rule 5.

---

[2] The Answer and Counterclaim is initialed in pencil DAB (Douglas A. Brady) on the top right hand corner. The initials of the judge on the filings indicate where the documents were forwarded to.

On February 14, 2017, the Court entered an order whereby the Court granted Downs' motion for reconsideration and/or motion for relief from the final order, vacated the March 14, 2016 order, and re-opened this matter.

¶ 5     On August 22, 2017, the parties submitted a stipulated joint discovery and scheduling plan, which the Court subsequently approved and entered on August 31, 2017 (Docket Entry No. 48). On December 20, 2017, the parties submitted a stipulated first amended joint discovery and scheduling plan, which the Court subsequently approved and entered on January 18, 2018 (Docket Entry No. 62). On August 3, 2018, Hunt filed a motion to approve the parties' stipulated second amended joint discovery and scheduling plan, which the Court subsequently approved and entered on August 9, 2018 (Docket Entry No. 72).

¶ 6     On August 28, 2018, Hunt filed a motion for protective order regarding notice of Hunt's deposition on August 29, 2018 (Docket Entry No. 73). On August 31, 2018, Downs filed an opposition to Hunt's motion for protective order regarding notice of Hunt's deposition on August 29, 2018 and cross-motion to compel Hunt to provide dates for his deposition (Docket Entry No. 74). On September 5, 2018, the Court entered an order whereby the Court granted Downs' cross-motion to compel Hunt to provide dates for his deposition and ordered Hunt to provide dates for his deposition and that the depositions must be completed no later than October 5, 2018 (Docket Entry No. 76). On September 19, 2018, Hunt filed a motion for reconsideration of the Court's September 5, 2018 order (Docket Entry No. 78). On September 21, 2018, Downs filed an opposition to Hunt's motion for reconsideration (Docket Entry No. 79).

¶ 7     On October 2, 2018, Hunt filed a motion for permission to appear for deposition by videoconference pursuant to Rule 30(b)(4) of the Virgin Islands Rules of Civil Procedure (Docket Entry No. 82) and Downs filed a motion to compel Hunt to appear in the Virgin Islands for his deposition and to extend the October 5, 2018 deposition deadline (Docket Entry No. 84). On October 9, 2018, Downs filed an opposition to Hunt's motion for permission to appear for deposition by videoconference pursuant to Rule 30(b)(4) of the Virgin Islands Rules of Civil

Procedure (Docket Entry No. 86) and on October 12, 2018, Hunt filed a reply thereto (Docket Entry No. 88) and an opposition to Downs' motion to compel Hunt to appear in the Virgin Islands for his deposition and cross-motion for protective order quashing the October 23, 2018 notice of Hunt's deposition (Docket Entry No. 87). On October 17, 2018, Downs filed a reply to Hunt's opposition to Downs' motion to compel Hunt to appear in the Virgin Islands for his deposition and an opposition to Hunt's cross-motion for protective order quashing the October 23, 2018 notice of Hunt's deposition (Docket Entry No. 89). On October 22, 2018, Hunt filed a reply to Downs' opposition to Hunt's cross-motion for protective order quashing the October 23, 2018 notice of Hunt's deposition (Docket Entry No. 90).

¶ 8    On November 2, 2018, Downs filed a motion for order to show cause why sanctions should not be entered against Hunt for failure to attend his deposition (Docket Entry No. 92), on November 16, Hunt filed an opposition thereto (Docket Entry No. 107), and on December 10, 2018, Downs filed a reply thereto (Docket Entry No. 118).

¶ 9    On November 7, 2018, Hunt filed a motion to approve a third amended discovery and scheduling plan (Docket Entry No. 94) and on November 14, 2018, Downs filed an opposition thereto (Docket Entry No. 103). On November 16, 2018, the Court entered an order whereby the Court approved Hunt's third amended discovery and scheduling plan (Docket Entry No. 106). On November 21, 2018, Hunt filed a reply to Downs' opposition to Hunt's motion to approve a third amended discovery and scheduling plan (Docket Entry No. 111).[4] On December 13, 2018, Downs filed a motion for reconsideration of the Court's November 16, 2018 order approving Hunt's third

---

[4] Based on Hunt's reply, it appears that Hunt was not in receipt of the Court's November 16, 2018 order when he filed his reply.

amended discovery and scheduling plan (Docket Entry No. 120), on December 21, 2018, Hunt

filed an opposition thereto (Docket Entry No. 122).

¶ 10    On November 16, 2018, Downs filed a motion to quash subpoena—to wit, Hunt's

subpoena to Merchants Commercial Bank, Inc. (Docket Entry No. 105), on November 30, 2018,

Hunt filed an opposition thereto (Docket Entry No. 116), and on December 14, 2018, Downs filed

a reply thereto (Docket Entry No. 121). On December 27, 2018, the Court entered an order

whereby the Court denied Downs' motion (Docket Entry No. 123).

¶ 11    On November 26, 2018, Downs filed a motion to quash subpoena—to wit, Hunt's

subpoena to First Liberty Mortgage, L.L.C., Coldwell Banker, Chris Hanley, and Lorine Williams

(Docket Entry No. 112). On December 10, 2018, Downs filed a notice of withdrawal of their

November 26, 2018 motion (Docket Entry No. 118). On January 10, 2019, the Court entered an

order whereby the Court denied Downs' motion (Docket Entry No. 128).[5]

¶ 12    On December 13, 2018, Downs filed a motion to quash subpoena—to wit, Hunt's subpoena

to the U.S. Virgin Islands Economic Development Authority (Docket Entry No. 105). On

November 28, 2018, the U.S. Virgin Islands Economic Development Authority filed a notice of

response indicating that it has responded to Hunt's subpoena (Docket Entry No. 115). On January

9, 2019, Hunt filed an opposition to Downs' December 13, 2018 motion (Docket Entry No. 126).

¶ 13    On February 5, 2019, Hunt filed a motion to approve a fourth amended discovery and

scheduling plan (Docket Entry No. 130), on February 21, 2019, Downs filed an opposition thereto

(Docket Entry No. 132), and on March 12, 2019, Hunt filed a reply thereto (Docket Entry No.

---

[5] Prior to the Court's implementation of the electronic filing system, Downs filed multiple filings in this matter in the Division of St. Thomas and St. John with a "Notice of Filing in Other Division," which would sometimes cause delay in getting these filings before the Court. On December 10, 2018, Downs filed their notice of withdrawal of their November 26, 2018 motion in the Division of St. Thomas and St. John with a "Notice of Filing in Other Division," and thus, the Court may not have received Downs' notice when the Court entered its January 10, 2019 order.

133). On August 7, 2019, Hunt filed a second motion to approve a fourth amended discovery and scheduling plan (Docket Entry No. 135), on August 21, 2019, Downs filed an opposition thereto (Docket Entry No. 137), and on September 10, 2019, Hunt filed a reply thereto (Docket Entry No. 138).

¶ 14 On August 15, 2019, Hunt filed a motion to compel mediation (Docket Entry No. 136). On October 29, 2019, Hunt filed a notice advising the Court that the Hunt and Downs plan on complete mediation on or before November 30, 2019 (Docket Entry No. 139). On November 21, 2019, the parties filed a mediation report indicating that Hunt and Downs appeared for mediation but "[t]he parties have reached a total impasse, all issues require Court action" (Docket Entry No. 140).

¶ 15 On December 6, 2019, Hunt filed a notice advising that Court that the parties have agreed for Coldwell Banker to turn over the Earnest Money Deposit to be deposited with the Court's registry (Docket Entry No. 141). The deposit was subsequently rejected by the Court because the funds were not certified.

¶ 16 On December 20, 2019, Downs filed a motion for sanctions against Hunt pursuant to Rule 90(f) of the Virgin Islands Rules of Civil Procedure for Hunt's "lack of good faith and failure to attend the court-ordered mediation in this matter" (Docket Entry No. 142), on January 16, 2020, Hunt filed an opposition thereto or in the alternative, motion for leave to file further response under seal (Docket Entry No. 144), on January 29, 2020, Downs filed a reply thereto (Docket Entry No. 146), and on January 30, 2020, Downs filed a supplement to their reply (Docket Entry No. 149). On January 16, 2020, Hunt filed a motion to strike Downs' December 20, 2019 motion (Docket Entry No. 143), on January 29, 2020, Down filed an opposition thereto (Docket Entry No. 147), and on February 19, 2020, Hunt filed a reply thereto (Docket Entry No. 150).

¶ 17    On April 9, 2021, Hunt filed another notice advising that Court that the parties have agreed for Coldwell Banker to turn over the Earnest Money Deposit to be deposited with the Court's registry (Docket Entry No. 151). On April 30, 2021, the Court entered an order whereby the Earnest Money Deposit was deposited in the non-interest bearing Court's registry (Docket Entry No. 152).

## DISCUSSION

¶ 18    Court will address the outstanding issues and motions in turn.

### 1. Hunt's Verified Complaint (Docket Entry No. 1)

¶ 19    As noted above, while Hunt's verified complaint stated that a September 18, 2015 purchase agreement was attached as Exhibit 1, no such exhibit was attached. However, in his motion to dismiss the counterclaim (Docket Entry No. 45), Hunt stated that "[t]his case arises out of a July 22, 2015 Residential Purchase and Sale Contract… (attached to the [Hunt's] verified complaint as Exhibit 1 and attached to [Downs'] answer and counterclaim as Exhibit A). (Docket Entry No. 45, pp. 1-2.) While it appears that Hunt disputed the effective date of the purchase agreement—to wit, Hunt stated the effective date as September 15, 2015 in his verified complaint (Docket Entry No. 1) and July 22, 2015 in his motion to dismiss the counterclaim (Docket Entry No. 45) and Downs stated the effective date as July 28, 2015 in their answer and counterclaim (Docket Entry No. 16), Hunt did not dispute, and in fact acknowledged and confirmed, that the purchase agreement— titled "RESIDENTIAL PURCHASE AND SALE CONTRACT"—attached to Downs' answer and counterclaim as Exhibit A is the same purchase agreement he referenced and attached in his verified complaint.[6] Thus, since Hunt's verified complaint explicitly indicated his intention to attach the purchase agreement as an exhibit and Hunt explicitly acknowledged and confirmed that

---

[6] *See supra*, footnote 2.

the purchase agreement—titled "RESIDENTIAL PURCHASE AND SALE CONTRACT"—attached to Downs' answer and counterclaim as Exhibit A is the purchase agreement he intended to attach as Exhibit 1 to his verified complaint, in the interest of judicial efficiency, the Court will treat the purchase agreement attached to Downs' answer and counterclaim as Exhibit A as the same purchase agreement Hunt referenced and intended to attach to his verified complaint and deem a copy attached to Hunt's verified complaint as Exhibit 1. As such, the Court will order that the purchase agreement—titled "RESIDENTIAL PURCHASE AND SALE CONTRACT"—attached to Downs' answer and counterclaim as Exhibit A will be treated as the purchase agreement Hunt referenced and intended to attach to his verified complaint as Exhibit 1 and a copy will be deemed attached to Hunt's verified complaint as Exhibit 1. The purchase agreement—titled "RESIDENTIAL PURCHASE AND SALE CONTRACT"—attached to Downs' answer and counterclaim as Exhibit A and to Hunt's verified complaint as Exhibit 1 will hereinafter be referred to as the "Purchase Agreement."

¶ 20    Additionally, while Hunt's verified complaint named Coldwell Banker as a defendant in this matter, to date, Coldwell Banker has not appeared or responded to Hunt's verified complaint. As such, the Court will order Hunt to make an appropriate filing in regard to the defendant who has failed to appear or answer.

2. **Downs' Motion for Entry of Default and Motion to Deem Counterclaim Admitted (Docket Entry No. 18)/ Hunt's Opposition to Downs' Motion for Entry of Default and Motion to Deem Counterclaim Admitted, or in the Alternative, Motion to Set Aside Entry of Default (Docket Entry No. 46)**

¶ 21    In their motion for entry of default and motion to deem counterclaim admitted, Downs argued that: (i) default should be entered against Hunt because Hunt failed to timely answer or otherwise respond to their counterclaim as required under Rule 12(a)(1)(B) of the Federal Rules

of Civil Procedure[7] and (ii) their counterclaim should be deemed admitted pursuant to Rule 8(b)(6)

of the Federal Rules of Civil Procedure since Hunt failed to answer or otherwise respond.

¶ 22    As noted above, there were some minor procedural confusions[8] that resulted in this matter

being closed and then re-opened. To date, no default has been entered against Hunt in this matter.

On August 4, 2017, Hunt filed a motion to dismiss the counterclaim, so Hunt has "otherwise

defended" against the counterclaim.[9] As such, the Court will deny Downs' motion for entry of

default and motion to deem counterclaim admitted.

### 3.  Hunt's Motion to Dismiss Counterclaim (Docket Entry No. 45)

¶ 23    In his motion, Hunt argued that the counterclaim should be dismissed pursuant to Rule

12(b)(6) of the Virgin Islands Rules of Civil Procedure for failure to state a claim upon which

relief can be granted. Hunt made the following assertions in support of his argument: (i) the

effective date of the Purchase Agreement was July 22, 2015 (Docket Entry No. 45, p. 1); (ii) the

Purchase Agreement contained a Third Party Financing Rider (hereinafter "TPF Rider") (Id., at

pp. 3-4); (iii) Downs failed to comply with the terms of the TPF Rider and thus, had no right to

terminate the Purchase Agreement as stated therein (Id., at p. 5); (iv) Downs never deposited the

---

[7] Prior to the promulgation of the Virgin Islands Rules of Civil Procedure on March 31, 2017, the attorneys and the Superior Court of the Virgin Islands routinely applied the Federal Rules of Civil Procedure through Rule 7 of the Superior Court Rules.

[8] *See supra,* footnote 3.

[9] The Court will note that this matter was re-opened on February 14, 2017 and Hunt did not file his motion to dismiss the counterclaim until August 4, 2017, and therefore, his motion could be considered untimely. Nevertheless, the Court will deny Downs' motion for entry of default and motion to deem counterclaim admitted because this Court has a policy of favoring dispositions of cases on their merits rather than procedural defect. *See Toussaint v. Stewart,* 67 V.I. 931, 947 (2017) ("In keeping with the intent and spirit of the rules of the Superior Court governing pleadings and amendments, decisions on the merits are favored, and dismissal of claims 'on the basis of such mere technicalities' are to be avoided."); *Banco Popular de P.R. v. Paraliticci,* 2017 V.I. LEXIS 131, at *3 (Super. Ct. Aug. 15, 2017) ("[T]his Court has a policy of favoring dispositions of cases on their merits."), *Great Bay Condo. Owners Ass'n v. Passarella,* 2014 V.I. LEXIS 125, at *6 (Super. Ct. Dec. 16, 2014) ("Because Virgin Islands judicial policy favors decisions on the merits of litigation, trial courts must be mindful that judgments by default are not favored."), *Carty v. Mason,* 2010 V.I. LEXIS 34, *13 (V.I. Super. Ct. May 6, 2010) ("the law favors dispositions of cases on their merits, rather than on procedural technicalities").

additional One Hundred Thousand Dollars ($100,000.00) on or before September 15, 2015 or the receipt of a loan agreement, as required under the Purchase Agreement (Id., at p. 4); (v) the sale and purchase of the Property as set forth in the Purchase Agreement never closed (Id.); (vi) "[t]here is no allegation that any default or failure to perform by the Seller Hunt prevented the transaction from closing" (Id.); (vii) Downs "admit that they are the parties who terminated the [Purchase Agreement], and they claim that the termination was made under the [TPF Rider]." (Id.); (viii) "[s]ince the Downs have not alleged that Hunt's default or failure to perform prevented the purchase transaction from closing, the only way the Downs could terminate the Contract is through paragraph 2 of the [TPR Rider] [b]ut by their own admission, the Downs did not comply with the terms of that paragraph." (Id., at p. 5.)

¶ 24 Downs did not file an opposition in response.

### a. Standard of Review

¶ 25 When Downs filed their counterclaim in 2016, the Virgin Islands courts "reviewed the sufficiency of complaints under the heightened 'plausibility' standard adopted by the Supreme Court of the United States." *Arno v. Hess Corp.*, 71 V.I. 463, 492-93 (V.I. Super. Ct. Oct. 17, 2019). However, on March 31, 2017, the Virgin Islands Supreme Court promulgated the Virgin Islands Rules of Civil Procedure and "restore[d] the notice pleading regime that had previously been in effect." *Id.*, at 493 (quoting *Mills-Williams v. Mapp*, 67 V.I. 574, 585 (V.I. 2017). "Although 'the Supreme Court of the Virgin Islands has yet to determine what exactly is required to survive a Rule 12(b)(6) motion to dismiss,' *Id.* (brackets, ellipsis, and citation omitted), Virgin Islands courts have returned to the prior 'no set of facts' standard in the interim." *See Id.* (citations omitted). Accordingly, even though Downs filed their counterclaim when the prior pleading standard was in effect, Clark's motion to dismiss, which was filed after the Virgin Islands Rules

of Civil Procedure was promulgated and remains pending, must be decided under the current

pleading standard pursuant to the current rules. *See Arno,* 71 V.I. at 494 ("Therefore, although the

complaints were filed before the 2017 changes, the motions to dismiss, which remained pending,

must be decided under the current rules."); *see also, Gov't of the V.I. v. The ServiceMaster Co.,*

*LLC,* 72 V.I. 114, 131 (V.I. Super. Ct. 2019) ("Accordingly, even though the Government filed its

complaint when the prior pleading standard was in effect, the Defendants' motion to dismiss must

be decided under the current pleading standard.").

¶ 26 Rule 12(b)(6) of the Virgin Islands Rules of Civil Procedure (hereinafter "Rule 12(b)(6)")

allows a party to assert the defense of "failure to state a claim upon which relief can be granted"

by motion and move for dismissal.[10] V.I. R. CIV. P. 12(b)(6). The Rule 12(b)(6) motion tests the

sufficiency of the complaint. The Virgin Islands is a notice pleading jurisdiction, and Rule

8(a)(2) the Virgin Islands Rules of Civil Procedure requires a pleading to contain "a short and plain

statement of the claim showing that the pleader is entitled to relief." V.I. R. CIV. P. 8(a)(2). As a

notice pleading jurisdiction, "[a] complaint is sufficient 'so long as it adequately alleges facts that

put an accused party on notice of claims brought against it.'" *Oxley v. Sugar Bay Club & Resort*

*Corp.,* 2108 V.I. LEXIS 81. *3 (V.I. Super. Ct. May 14, 2018) (quoting *Mills-Williams,* 67 V.I. at

585; *accord Arno,* 71 V.I. at 501 ("'Plead the who, what, where, when, and how — sufficient

information to put a defendant on notice of the conduct and actions the plaintiff complains of.'"

(brackets and citation omitted)). "When ruling on a motion to dismiss for failure to state a claim,

the court does not address the merits." *Oliver v. Terminix Int'l Co.,* 73 V.I. 210, 214 (V.I. Super.

---

[10] Since a copy of the Purchase Agreement was attached to Downs' counterclaim, the Purchase Agreement is part of the pleadings and may be considered without conversion of Hunt's motion to dismiss into a motion for summary judgment. V.I. R. CIV. P. 12(b)(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.")

Ct. April 26, 2020); accord *Arno*, 71 V.I. at 494. Instead, courts 'assume all reasonable factual allegations in the complaint as true and draw all fair inferences from such allegations.'" *Arno*, 71 V.I. at 494 (quoting *In re Kelvin Manbodh Asbestos Litig. Seiers*, 47 V.I. 375, 380 (V.I. Super. Ct. March 3, 2006)). However, "[a]llegations will not be reasonable, nor will inferences in favor of the plaintiff be fair, where they contradict facts either contained in the public record or judicially noticed by the Court." *In re Kelvin Manbodh Asbestos Litig. Series*, 47 V.I. at 380.

### b. Discussion

¶ 27    Here, Hunt argued[11] that Downs' counterclaim should be dismissed because Downs failed to sufficiently plead a breach of contract claim.[12] In *Phillip v. Marsh-Monsanto*, the Virgin Islands Supreme Court established that a breach of contract claim requires the plaintiff to demonstrate: (1)

---

[11] Although Hunt raised arguments addressing the merits of Downs' counterclaim, the Court will not address the merits and only address the sufficiency of Downs' counterclaim. *Oliver*, 73 V.I. at 214 ("When ruling on a motion to dismiss for failure to state a claim, the court does not address the merits.").

[12] In their counterclaim, Downs alleged:

1. [Downs] entered into a contract for purchase of [the Property] from [Hunt] with the effective date of July 27, 2015 (the "Contract"). [Exhibit A]

2. In accordance with the Contract the Downs paid a Fifty Thousand Dollar ($50,000.00) earnest money deposit (the "Earnest Money Deposit").

3. The Contract contained a Third Party Financing Rider ("TPF Rider").

4. The TPF Rider allowed Downs to terminate the Contract if third party financing was not approved.

5. Downs applied for third party financing on July 28, 2015.

6. Third party financing was denied because appraisal was well below purchase price.

7. Downs timely notified Hunt through his agent(s) that financing was not approved.

8. Downs provided Hunt through his agent written notice of the denial of third party financing the same day it was received by Downs.

9. After said notification the parties attempted to reach an agreement as to the reduction of the purchase rice such that the third party financing would be approved. No agreement in this regard was ever reached.

10. Once received, Downs provided written denial of their loan application (hereinafter the "Denial Letter") to [Hunt] or his agent(s) as required by the TPF Rider. [Exhibit B]

11. The Downs complied with the TPF Rider and properly terminated the Contract.

12. The Downs are entitled to refund of their Earnest Money Deposit per the Contract.

13. [Hunt] breached the Contract by refusing to agree to the release of the Earnest Money Deposit.

14. [Hunt] has caused the Downs damages in an amount to be shown at trial.

an agreement; (2) a duty created by the agreement; (3) a breach of that duty; and (4) damages. 66 V.I. 612, 621 (V.I. 2017).

¶ 28    As to the first element, the Court finds that Downs has sufficiently pled the existence of an agreement between Hunt and Downs—to wit, the Purchase Agreement. As to the second element, the Court finds that Downs has not sufficiently pled that the Purchase Agreement created a duty for Hunt to refund to Downs the Earnest Money Deposit. While Downs alleged that they complied with the TPF Rider and properly terminated the Purchase Agreement, Downs failed to plead any facts to demonstrate that Hunt owed such a duty under the Purchase Agreement—a duty to refund to Downs the Earnest Money Deposit—simply because Downs allegedly complied with the TPF Rider and allegedly properly terminated the Purchase Agreement under the TPF Rider. At this juncture, the Court's inquiry needs not delve into the remaining elements of the breach of contract claim since Downs has failed to sufficiently plead the duty that Hunt allegedly breached.

¶ 29    Accordingly, the Court finds that, even liberally construing the pleading in the light most favorable to Downs, Downs have not presented "a short and plain statement of the claim showing that the pleader is entitled to relief" from Hunt, nor does the pleading "adequately allege facts that put an accused party on notice of claims brought against it." *Mills-Williams*, 67 V.I. at 585 (citation omitted). Accordingly, the Court will grant Hunt's motion to dismiss counterclaim and dismiss Downs' counterclaim without prejudice.

### 4. Hunt's Motion for Protective Order Regarding Notice of Hunt's Deposition on August 29, 2018 (Docket Entry No. 73)

¶ 30    On September 5, 2018, the Court entered an order whereby the Court granted Downs' cross-motion to compel Hunt to provide dates for his deposition. As such, Hunt's motion for protective order regarding notice of Hunt's deposition on August 29, 2018 will be denied as moot.

5. **Hunt's Motion for Reconsideration of the Court's September 5, 2018 Order (Docket Entry No. 78)/ Hunt's Motion for Permission to Appear for Deposition by Videoconference Pursuant Rule 30(b)(4) of the Virgin Islands Rules of Civil Procedure (Docket Entry No. 82)/ Downs' Motion to Compel Hunt to Appear in the Virgin Islands for His Deposition and to Extend the October 5, 2018 Deposition Deadline (Docket Entry No. 84)/ Hunt's Cross-Motion for Protective Order Quashing the October 23, 2018 Notice of Hunt's Deposition (Docket Entry No. 87)/ Downs' Motion for Order to Show Cause Why Sanctions Should Not be Entered Against Hunt for Failure to Attend His Deposition (Docket Entry No. 92)**

¶ 31     At this time, it is unclear whether Hunt's deposition has occurred. As such, the Court will order the parties to file a joint notice advising the Court (i) whether Hunt's deposition has occurred and (ii) whether any of these motions (Docket Entry Nos. 78, 84, 87, and 92) are moot. The Court will reserve ruling on these motions pending receipt of the parties' joint notice.

6. **Downs' Motion for Reconsideration of the Court's November 16, 2018 Order Approving Hunt's Third Amended Discovery and Scheduling Plan (Docket Entry No. 120)/ Hunt's Motion to Approve a Fourth Amended Discovery and Scheduling Plan (Docket Entry No. 130)/ Hunt's Second Motion to Approve a Fourth Amended Discovery and Scheduling Plan (Docket Entry No. 135)**

¶ 32     Here, the Court finds that Hunt implicitly withdrew his prior motion to approve a fourth amended discovery and scheduling plan when he filed a second motion to approve a fourth amended discovery and scheduling plan. *See Magras v. National Industrial Services, et al.*, 2021 V.U. Super 50U, ¶ 8; *see alsoe In re Refinery Dust Claims*, 72 V.I. 256, 290 (Super. Ct. Dec. 13, 2019) (citing *Mitchell v. Gen. Eng'g Corp.*, 67 V.I. 271, 278 (Super. Ct. Feb. 23, 2017) ("a motion can also be deemed withdrawn based on certain actions or inactions of the party who filed the motion"). As such, Hunt's motion to approve a fourth amended discovery and scheduling plan will be deemed withdrawn.

¶ 33     At this time, it is unclear whether the parties have completed discovery in this matter, which has been pending since 2015. As such, the Court will order the parties to file a joint notice advising the Court (i) whether the parties have completed discovery in this matter, (ii) if discovery has not

been completed, then what remains to be done in discovery, (iii) whether any of these motions

(Docket Entry Nos. 120 and 135) are moot. The Court will reserve ruling on these motions pending

receipt of the parties' joint notice.

### 7. Downs' Motion to Quash Subpoena—to wit, Hunt's Subpoena to the U.S. Virgin Islands Economic Development Authority (Docket Entry No. 105)

¶ 34    As noted above, on November 28, 2018, the U.S. Virgin Islands Economic Development

Authority filed a notice of response indicating that it has responded to Hunt's subpoena. As such,

Downs' Motion to Quash Subpoena—to wit, Hunt's Subpoena to the U.S. Virgin Islands

Economic Development Authority will be denied as moot.

### 8. Hunt's Motion to Compel Mediation (Docket Entry No. 136)

¶ 35    As noted above, the parties completed mediation in this matter and filed a mediation report

on November 21, 2019. As such, Hunt's motion to compel mediation will be denied as moot.

### 9. Downs' Motion for Sanctions Against Hunt Pursuant to Rule 90(f) of the Virgin Islands Rules of Civil Procedure for Hunt's "Lack of Good Faith and Failure to Attend the Court-Ordered Mediation in this Matter" (Docket Entry No. 142)/ Hunt's Opposition Thereto or in the Alternative, Motion for Leave to File Further Response Under Seal (Docket Entry No. 144)/ Hunt's Motion to Strike Downs' Motion for Sanctions (Docket Entry No. 143)

¶ 36    The Court will issue a separate ruling as to these motions (Docket Entry No. 142, 143, and

144).

### CONCLUSION

Based on the foregoing, it is hereby:

**ORDERED** that the purchase agreement—titled "RESIDENTIAL PURCHASE AND

SALE CONTRACT"—attached to Downs' answer and counterclaim as Exhibit A shall be treated

as the purchase agreement Hunt referenced and intended to attach to his verified complaint as

Exhibit 1 and a copy shall be deemed attached to Hunt's verified complaint as Exhibit 1. It is

further:

**ORDERED** that Hunt shall make an appropriate filing in regard to the defendant who has

failed to appear or answer. It is further:

**ORDERED** that Downs' motion for entry of default and motion to deem counterclaim

admitted (Docket Entry No. 18) is **DENIED**. It is further:

**ORDERED** that Hunt's motion to dismiss counterclaim (Docket Entry No. 45) is

**GRANTED** and Downs' counterclaim is **DISMISSED WITHOUT PREJUDICE**. It is further:

**ORDERED** that Hunt's motion for protective order regarding notice of Hunt's deposition

on August 29, 2018 (Docket Entry No. 73) is **DENIED AS MOOT**. It is further:

**ORDERED** that Hunt's motion to approve a fourth amended discovery and scheduling

plan (Docket Entry No. 130) is **DEEMED WITHDRAWN**. It is further:

**ORDERED** that, **within thirty (30) days from the date of entry of this Memorandum**

**Opinion and Order**, the parties shall file a joint notice advising the Court of the following:

    (i)      whether Hunt's deposition has occurred;
    (ii)     whether the parties have completed discovery in this matter;
    (iii)    if discovery has not been completed, then what remains to be done in discovery; and
    (iv)    whether any of these motions (Docket Entry Nos. 78, 84, 87, 92, 120 and 135) are moot.

The Court will reserve ruling on these motions (Docket Entry Nos. 78, 84, 87, 92, 120, and 135)

pending receipt of the parties' joint notice. It is further:

**ORDERED** that Downs' Motion to Quash Subpoena—to wit, Hunt's Subpoena to the U.S.

Virgin Islands Economic Development Authority is **DENIED AS MOOT. And** it is further:

**ORDERED** that Hunt's motion to compel mediation is **DENIED AS MOOT**.

**DONE and so ORDERED this** 28ᵗʰ **day of May 2021.**

**ATTEST:**
Tamara Charles
Clerk of the Court

By: _____
Court Clerk Supervisor II

Dated: _____6/1/2021_____

HAROLD W.L. WILLOCKS
**Presiding Judge of the Superior Court**